## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

FILED

03 SEP -3 PM 3: 57

U
N.D. OF ALABAMA

|  |  |  |
|---|---|---|
| DEBORAH ADAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-01-S-1489-NW |
| | ) | |
| COLBERT COUNTY EMERGENCY | ) | |
| MANAGEMENT COMMUNICATIONS | ) | |
| DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

SEP - 3 2003

## MEMORANDUM OPINION

Defendant moved this court to reconsider its denial of defendant's motion for summary judgment on that portion of plaintiff's retaliation claim relating to her termination (doc. no. 41).[1] This court granted that motion and ordered plaintiff to file a response (doc. no. 42). She has done so, and the court now undertakes such reconsideration.

## I. FACTS

The court adopts the facts set forth in its summary judgment memorandum opinion, except for recognizing that plaintiff is not African American, but Caucasian — a mistake of fact that is not material to the adjudication of any of plaintiff's claims.[2]

---

[1] See doc. no. 33 (memorandum opinion entered Dec. 12, 2002).

[2] Of course, such an error is embarrassing; and, the court is at a loss to explain how it occurred, except for reiterating that the parties' disorganized evidentiary submissions made factual determinations difficult:

> The court also notes that the parties' repeated, nonspecific citations to multiple-page affidavits and evidentiary submissions caused the court to exert an unnecessary amount of time sifting through documents to ascertain the relevant, undisputed facts. Defendant did not even bother to number the pages of many of its evidentiary submissions, causing this court to hand-number them. Generalized citations, such as "Plaintiff's Evidentiary Submissions # 1," or "Melton Affidavit," are not particularly helpful when that citation is

44

## II. DISCUSSION

Plaintiff claims that her employment was terminated in retaliation for her support of co-worker Janice Rutland's charge of discrimination, as well as for prosecution of her own discrimination claim.

A Title VII retaliation claim can be supported by either direct or circumstantial evidence. *See generally Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997); *Donnelon v. Fruehauf Corp.*, 794 F.2d 598 (11th Cir. 1986). Plaintiff claims that she can prove retaliation by both forms of evidence. The court concludes that plaintiff has presented direct evidence of retaliation and, accordingly, it is not necessary to analyze plaintiff's circumstantial evidence argument.

Direct evidence is generally defined as evidence which, if believed, proves the existence of a fact in issue without the need of an inference or presumption. *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1111 (11th Cir. 2001) (the term "direct evidence," when used in the context of a Title VII race discrimination claim, "refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination"); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require . . . an inferential leap between fact and conclusion."); *Burrell v. Board of Trustees of Georgia*

---

to a multi-page document, because the reader must then search the entire document to find the cited fact.

*Id.*, at 3 n.2. Even so, the court stands corrected — not for the first time, nor the last — and shamefacedly accepts culpability.

-2-

*Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (defining direct evidence of discrimination as evidence which, "if believed, proves [the] existence of [a] fact in issue without inference or presumption").

Further, to be considered direct evidence, a statement must: (1) be uttered by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus. *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).

Plaintiff asserts that statements made by Mike Melton, who was plaintiff's supervisor and the Director of the Colbert County Emergency Management Communications District, in the presence of his administrative assistant, Mary Boddie, constitute direct evidence of defendant's retaliatory intent. (Coincidentally, Boddie also filed a charge of discrimination against defendant.[3])

Although Boddie, who was employed by defendant from June 30, 2000 until August 29, 2001,[4] could not recall the specific dates on which Melton uttered the statements alleged to be direct evidence of his discriminatory animus, she explained that his comments were "continuous": *i.e.*, "[i]t was a weekly conversation . . . it was ongoing during the work week."[5] Boddie testified as follows during deposition:

---

[3] Plaintiff's evidentiary submissions, Tab 6 (Boddie EEOC charge), at Exhibit 3.

[4] *Id.*

[5] Defendant's evidentiary submissions, Exhibit E (Boddie deposition), at 34-35, 58-59. Apparently, many of Melton's comments were made before December 20, 2000, which was the date that Boddie signed a statement as to her dealings with plaintiff and Janice Rutland, as evidenced from the circumstances that caused Boddie to give that statement:

Q:   Why did you make this statement . . . ?

Q:    And you say that he [Melton] told you he was unhappy with them [*i.e.*,
      plaintiff and Janice Rutland].  What did he say?

A:    He wanted them gone.

Q:    And when he said he wanted them gone what did he say to you about
      [why] he wanted them gone?

A:    That he had been captain of his baseball team at Cherokee or
      somewhere in high school, and as captain, he ruled.  Everything went
      his way, and he was going to take the helm of that directorship.  And
      it was going to be done his way.  You were going to be on his team, or
      you were going to be out the door.  They were not on his team.

Q:    Other than their not being on his team, did he say anything else about
      why he wanted them gone?

A:    They were repulsive.  He didn't like — he didn't like them.  I mean
      they weren't packaged the way he wanted them packaged.  He wanted
      his team the way he wanted it to look.[6]

.  .  .  .

A:    . . . And if you crossed him . . . he pulled out all of the stops.[7]

.  .  .  .

Q:    Other than saying "got to be on my team," did he say anything else that
      you thought was inappropriate?

A:    Yes, many things.  I mean he slammed doors.[8]

---

A:    Because Mike Melton and Lance Young had emphasized to me that something had
      to be done to get rid of these people [presumably plaintiff and Janice Rutland] . . .
      .

*Id.* at 54-55.

[6] Defendant's evidentiary submissions, Exhibit E (Boddie deposition), at 18-19.

[7] *Id.* at 19-20.

[8] *Id.* at 22.

-4-

. . . .

A:   He consciously put pressure on me to realize that I had been brought in — that he had first interviewed me and sought me in order for me to come in and be on his team, and that I needed to get in line with that, that everybody else was supportive of him.   He named Patty [presumably referring to Patti McAnally].   He named Wesley Beard. He named Jennifer Rutland.   He said, "You support me, or you hit the door." . . .[9]

. . . .

Q:   My simple question is:  I want to know everything that Mr. Melton said that you considered to be inappropriate with regard to Ms. Rutland or Ms. Aday?

A:   He discussed their size.   He discussed their looks.   He discussed them getting on his nerves.   He discussed that they were causing him to not be able to function or work, that things would be better if they were gone. . . .[10]

. . . .

A:   He [Melton] called them whining bitches.   He would call them fat bitches, disgusting, they smelled.[11]

. . . .

Q:   Now, you told me that Mr. Melton referred to Ms. Aday and Ms. Rutland as whining bitches. On how many occasions did you hear that?

A:   Maybe a few.  I mean —

Q:   Two, three times?

A:   From June 30th until — I can't say.[12]

---

[9] *Id.* at 23-24.

[10] *Id.* at 25.

[11] *Id.* at 26.

[12] *Id.* at 33.

. . . .

Q:  What did he say about their looks, though?

A:  They were not what he wanted on — in his environment.

Q:  Other than saying he didn't want their looks in his environment, did he say anything else about their looks?

A:  Yes.

Q:  What?

A:  I mean he wanted them gone.  He didn't care for their looks.[13]

. . . .

Q:  Now, you said he strategized about having them gone.  What did you hear Mr. Melton say that was strategizing about getting rid of Ms. Rutland and Ms. Aday?

A:  They were to be watched.  There were to be notes taken.  He encouraged me to write things up on them on a continuous basis. Lance Young did.  David Reed did.[14]

. . . .

Q:  . . . Did he [Melton] do anything else that you claim fall [sic] into this category of strategizing to get rid of them?

A:  He encouraged Wesley Beard and Michael David Smith to watch them on and off the job. *He called Michael David Smith and Wesley in at one point and when one of the board members, Mr. Mark Simpson, was there and questioned Michael David as to what he saw when he had him to drive by Ms. Aday's house.* He questioned me as to monies that I had issued to them for travel expenses.[15]

---

[13] Defendant's evidentiary submissions, Exhibit E (Boddie deposition), at 36.

[14] *Id.* at 38.

[15] *Id.* at 40 (emphasis supplied).

. . . .

Q:    *When did you learn that the two employees* [plaintiff and Janice
      Rutland] *were engaged in charges of discrimination?*[16]

. . . .

A:    *I was told by Mr. Melton, I believe, in October* [of 2000].

Q:    *What did he tell you?*

A:    *He told me that they had gone to the commission on him. He told me
      that they were out to get him,* that he had done nothing wrong, that he
      needed my support, and he needed my help.

Q:    Now, he told you who had gone to the commission on him?

A:    He told me that Janice Rutland and Deborah Aday had.

Q:    And what commission had they gone to?

A:    Colbert County.[17]

. . . .

Q:    *Well, did he say anything negative about the fact that they had filed a
      lawsuit against the company?*

A:    *Yes.*

Q:    *What did he say?*

A:    *That he was going to get them, that he was going to have to defend
      himself, and that he was going to have to take care of it.*[18]

While Melton's disdain for the physical characteristics and attitudes of plaintiff and

---

[16] *Id.* at 57.

[17] *Id.* at 57-58.

[18] Defendant's evidentiary submissions, Exhibit E (Boddie deposition), at 61 (emphasis supplied).

Janice Rutland[19] is not actionable under Title VII, the statement that "he was going to get them" constitutes direct evidence of Melton's retaliatory intent in terminating plaintiff's employment, because it has been shown to specifically relate to that employment action. *See Merritt v. Dillard Paper Co.*, 129 F.3d 1181, 1189-90 (11th. Cir. 1997).

In *Merritt*, the Eleventh Circuit pointed out that the "quintessential example of direct evidence" in a retaliation case would be a statement like "'Fire Merritt — he gave the most damning deposition testimony.'" *Id.* at 1190. *See also Hamilton v. Montgomery County Board of Education,* 122 F. Supp. 2d 1273, 1288 (M.D. Ala. 2000) (holding that the statement "Hamilton should not be hired because of his pending litigation" was "the equivalent of a smoking gun" in terms of providing direct evidence of retaliatory intent). However, the Eleventh Circuit has consistently held that even less direct expressions of discriminatory or retaliatory intent from a decisionmaker constitute direct evidence, so long as the expressions

> "reflect[] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990). *See Haynes v. W.C. Caye & Co., Inc.*, 52 F.3d 928, 930 (11th Cir. 1995) (holding that statement questioning whether "sweet little old lady could get tough enough" to do job and statement that "a woman was not competent enough to do this job" constitute direct evidence); *Burns v. Gadsden State Community College,* 908 F.2d 1512, 1518 (11th Cir. 1990) (holding that statement that "no woman would be named to a B scheduled job" constitutes direct evidence); *Caban-Wheeler*, 904 F.2d at 1555 (holding that defendant's statement that program needed a black director constitutes direct evidence); (*E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 923 (11th Cir. 1990) (holding that general

---

[19] As recorded in the preceding deposition extracts, Melton found both women to be "repulsive," "fat," "disgusting," "smelle[y]," "whining bitches," who were "not on his team."

manager's statement that "if it was his company, he wouldn't hire any black people" and production manager's statement that "you people can't do a ---- thing right" constitute direct evidence); *E.E.O.C. v. Beverage Canners, Inc.,* 897 F.2d 1067, 1068 n.3, 1072 (11th Cir. 1990) (holding that plant manager's constant barrage of racial slurs and statements such as "[t]hose niggers out there will not get anywhere in this company" constitute direct evidence); *Sennello v. Reserve Life Ins. Co.,* 872 F.2d 393, 394, 395 (11th Cir. 1989 (holding that statement that "we can't have women in management" constitutes direct evidence); *Walters v. City of Atlanta,* 803 F.2d 1135, 1141-42 (11th Cir. 1986) (holding that memorandum requesting a new list of candidates because "current register . . . does not include any minority group representation" constitutes direct evidence); *Wilson v. City of Aliceville,* 779 F.2d 631, 633, 636 (11th Cir. 1986) (holding that mayor's statement that "he wasn't gonna let no Federal government make him hire no god-dam nigger" constitutes direct evidence); *Thompkins v. Morris Brown College,* 752 F.2d 558, 561, 563 (11th Cir. 1985) (holding that college president's statement that he saw no reason for a woman to have a second job and statement that males had families and needs that female plaintiff did not constitute direct evidence); *Miles v. M.N.C. Corp.,* 750 F.2d 867, 874, 75 (11th Cir. 1985) (holding that plant manager's statement that he wouldn't hire blacks because "[h]alf of them weren't worth a shit" constitutes direct evidence); *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1553, 1557 (11th Cir. 1983) (holding that supervisor's statement that he would not put woman in washerman position because "every woman in the plant would want to go into the washroom" constitutes direct evidence); *but see Harris,* 99 F.3d at 1082, 1083 n.2 (holding that statement that "*under the circumstances* we did not need to employ a black at Thompson High School" open to more than one interpretation and thus not direct evidence) (emphasis added).

*Merritt,* 120 F.3d at 1189-90.

The key inquiry is whether the evidence demonstrates that the "complained-of employment decision was *motivated* by the decision-maker's [discrimination]." *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1358-59 (11th Cir. 1999) (emphasis in original). The Eleventh Circuit found a sufficient correlation between an employer's retaliatory attitude and the plaintiff's subsequent failure to receive a promotion in *Taylor v.*

*Runyon,* 175 F.3d 861 (11th Cir. 1999).  In *Taylor,* the plaintiff claimed she was denied a promotion because she had filed an Equal Employment Opportunity (EEO) complaint against her employer for gender discrimination.  *Taylor,* 175 F.3d at 864-65.  The plaintiff's supervisor had commented to her that, "because of her gender discrimination claim against him, her career was going nowhere," that she was "no longer worthy of his trust because she filed a discrimination claim against him," and that she could not be recommended for advanced training courses because she "exhibited a bad attitude in filing her discrimination claim." *Id.*  These statements indicated that the plaintiff's charge of discrimination and her subsequent adverse treatment were "not wholly unrelated." *Id.* at 870 (citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993)).  Thus, the statements constituted direct evidence of the employer's retaliatory intent, and summary judgment was not appropriate. *Taylor,* 175 F.3d at 870.

Similarly, in this case, Melton's statements that he was "going to get [plaintiff], that he was going to have to defend himself, and that he was going to have to take care of it,"[20] are sufficiently related to plaintiff's termination to constitute direct evidence of Melton's retaliatory intent.  It is undisputed that Melton was the decisionmaker who made the decision to terminate plaintiff's employment.  Further, Boddie testified that Melton made the above statements as a negative reaction to "the fact that [plaintiff] had filed a lawsuit against the company[.]"[21]  Melton's statements therefore demonstrate that he was motivated by an intent

---

[20]Defendant's evidentiary submissions, Exhibit E (Boddie deposition), at 61.
[21]*Id.*

-10-

to retaliate against plaintiff for filing the EEOC charge when he made the decision to terminate plaintiff's employment. *See Fleming*, 196 F.3d at 1358-59. At the very least, Melton's statements and the termination of plaintiff's employment are not "wholly unrelated." *See Taylor*, 175 F.3d at 870. Accordingly, Melton's statements constitute direct evidence of his retaliatory intent.

Because plaintiff has presented direct evidence of Melton's retaliatory intent, her claim for retaliation in relation to the termination of her employment must survive summary judgment. "Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even when the movant presents conflicting evidence." *Mize v. Jefferson City Board of Education,* 93 F.3d 739, 742 (11th Cir. 1996). Rather, the evidence should be presented to the trier of fact. *See Nealey v. University Health Services, Inc.,* 114 F. Supp. 2d 1358, 1370 (S.D. Ga. 2000). Additionally, because plaintiff has presented direct evidence of Melton's retaliatory intent, it is not necessary to address whether there is sufficient circumstantial evidence or whether plaintiff has made a sufficient showing of pretext. *See Merritt,* 120 F.3d at 1191.

### III. CONCLUSION

Upon reconsideration of materials submitted by the parties and the summary judgment memorandum opinion entered on December 12, 2002,[22] this court remains of the opinion that summary judgment is due to be denied on that portion of plaintiff's retaliation claim based upon her termination. An order consistent with this memorandum opinion will be entered

---

[22] *See* doc. no. 33.

contemporaneously herewith.

DONE this ____3rd____ day of September, 2003.

_____
United States District Judge